IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                 CR No. 14-2130 KG

POLLY P. HOPPER,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant's Motion for Compassionate Release, filed May 18, 2020. (Doc. 340). Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because she alleges the COVID-19 pandemic poses an unreasonable risk of harm in federal prison. Having carefully reviewed the record and applicable law, the Court will deny the Motion.

*I. Background*

On February 27, 2015, after a jury trial, Defendant was found guilty of kidnapping and conspiracy in violation of 18 U.S.C. §§ 371 and 1201(a)(1). (Doc. 184). On October 27, 2015, the Court sentenced Defendant to 292 months imprisonment, followed by five years of supervised release. (Doc. 212). Defendant filed a direct appeal arguing that her trial should have been severed from her co-defendants' trials, there was insufficient evidence to support her convictions, and her sentence is substantively unreasonable. (Doc. 219). The Tenth Circuit rejected those challenges and affirmed Defendant's conviction and sentence. (Doc. 276-1).

Defendant then challenged her convictions under 28 U.S.C. § 2255, and the Court denied her Section 2255 motion. (Docs. 281, 320). Defendant again appealed, and the Tenth Circuit denied a Certificate of Appealability and dismissed the appeal. (Docs. 322, 333). Defendant also filed a second Section 2255 motion, which the Court denied under 28 U.S.C. § 2255(h). (Doc. 338).

On May 18, 2020, Defendant filed the instant Motion seeking compassionate release due to COVID-19. (Doc. 340). On June 9, 2020, counsel was appointed for Defendant. (Doc. 343). On July 13, 2020, Defendant's counsel filed a brief in support of Defendant's Motion for Compassionate Release, (Doc. 347), over 700 pages of Defendant's medical records, (Doc. 348), and a summary of Defendant's current medications, (Doc. 349). On July 14, 2020, Defendant's counsel filed a notice that Defendant tested positive for COVID-19 on July 6, 2020. (Doc. 350). Pursuant to the Court's Order, (Doc. 353), on July 29, 2020, the Government filed a response to the Motion and additional medical records. (Docs. 354 and 355). On August 10, 2020, Defendant's counsel filed a reply to the Motion. (Doc. 356).

Defendant is 66 years old and is incarcerated at Carswell Federal Medical Center, Fort Worth, Texas (FMC Carswell). (Doc. 347) at 2. Her anticipated release date is February 2, 2035, and her home detention eligibility date is August 2, 2034. (Doc. 354) at 6. On July 6, 2020, Defendant contracted COVID-19, and was quarantined in a cell with three other COVID-19 positive inmates. (Doc. 350) at 1. Defendant states she has chronic obstructive pulmonary disease (COPD), uncontrolled hypertension (high blood pressure), and myocardial mild ischemia (when blood flow to the heart is reduced, preventing the heart muscle from receiving enough oxygen, usually the result of a partial or complete blockage of the coronary arteries). (Doc. 347) at 10. Defendant argues her age and these medical conditions put her at high risk of

complications and even death from COVID-19. *Id.* at 10-11. Defendant is a "Care Level 3" inmate at FMC Carswell, which indicates she is an outpatient requiring "frequent clinical contacts to maintain control or stability of [her] condition, or to prevent hospitalization or complications." *Id.* at 10. Defendant emphasizes that, as of July 13, 2020, FMC Carswell reported 134 confirmed cases of COVID-19 among the inmates and three confirmed cases among the staff. *Id.* at 15.

In addition, Defendant asserts she exhausted her administrative remedies by submitting a request for Reduction in Sentence or Compassionate Release to the warden of FMC Carswell, which was denied. *Id.* at 3. Defendant states she has had one disciplinary issue while in custody—possessing a watch without a band—for which she lost seven days of commissary. *Id.* at 20. She has completed a number of classes, including the Life Connections Program which is a residential reentry program. *Id.* at 20-21. In her reply brief, Defendant asks to be released to reside with her sister in Tyler, Texas, to continue her quarantine and recovery, or, alternatively, to a residential re-entry center or skilled nursing/assisted living facility. (Doc. 356) at 10. Defendant states she intends to find a place of her own once her social security benefits are reinstated. *Id.*

In response, the Government agrees that Defendant has exhausted her administrative remedies. (Doc. 354) at 8, n.2. However, the Government opposes Defendant's motion for three reasons: (1) the Government argues the motion is moot since Defendant has now tested positive for COVID-19; (2) Defendant has not presented "extraordinary and compelling" reasons warranting a sentence reduction; and (3) Defendant continues to pose a danger to the community and the relevant § 3553(a) factors do not weigh in favor of her release. *Id.* at 9-15. The

3

Government notes that Defendant was briefly hospitalized after her positive COVID-19 test on July 6, 2020, and was discharged on July 9, 2020, after her condition improved. *Id.* at 13. On July 13, 2020, Defendant was admitted to an inpatient housing unit for closer monitoring and supportive care and was found to be asymptomatic as of July 22, 2020. *Id.* The Government explains that because Defendant's condition did not deteriorate, she did not meet the Bureau of Prisons' reduction in sentence policy criteria. *Id.*

## II. Discussion

Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons (BOP) could seek compassionate release under 18 U.S.C. § 3582(c). The First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, at 5239. Section 603(b) of the First Step Act now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after he has exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on his behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility ... ." 18 U.S.C. § 3582(c)(1)(A).

Aside from allowing prisoners to bring a motion directly, the First Step Act did not change the standards for compassionate release. Relief is available where the sentence reduction is supported by: (1) "extraordinary and compelling reasons;" (2) "applicable policy statements issued by the Sentencing Commission[;]" and (3) "the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i)-(ii). As to the first requirement, Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for a

sentence reduction, including ... a list of specific examples." 28 U.S.C. § 994(t). *See also United States v. Saldana,* 2020 WL 1486892, at *2 (10th Cir.) (looking to Sentencing Commission factors to define extraordinary and compelling reasons for release). The Sentencing Commission has listed four categories of extraordinary and compelling reasons: "(A) Medical Condition of the Defendant," "(B) Age of the Defendant," "(C) Family Circumstances," and "(D) Other Reasons." U.S.S.G. § 1B1.13, cmt. n.1.

*A. Mootness*

The Government first argues Defendant's Motion is moot because she has tested positive for COVID-19, so the Government asks the Court to deny the current motion without prejudice and wait to see how she responds to treatment. (Doc. 354) at 10. Defendant responds that her Motion is not moot because it is possible for a person who had COVID-19 to become re-infected, so her health concerns remain. (Doc. 356) at 1-3 (gathering cases where courts have granted motions for compassionate release for inmates who had contracted COVID-19). It is not yet clear whether re-infection is likely after recovery from COVID-19. *See Clinical Questions about COVID-19: Questions and Answers, Centers for Disease Control and Prevention,* available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last visited on August 17, 2020) ("Patients infected with other betacoronaviruses (MERS-CoV, HCoV-OC43), the genus to which SARS-CoV-2 belongs, are unlikely to be re-infected shortly (*e.g.*, 3 months or more) after they recover. However, more information is needed to know whether similar immune protection will be observed for patients with COVID-19."). Therefore, the Court agrees with Defendant that her Motion is not moot.

B. *Extraordinary and Compelling Reasons to Justify Release*

Next, the Court considers Defendant's argument that a sentence reduction is supported by "extraordinary and compelling reasons" and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The applicable policy statement here is U.S.S.G. § 1B1.13 (Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A)), which provides examples of "extraordinary and compelling reasons" in four categories based on a defendant's: (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health combined with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13. The Application Notes to U.S.S.G. § 1B1.13 describe two categories of extraordinary medical impairments. The first category applies to prisoners 65 or older who have served at least 10 years (or 75%) of their sentence and are experiencing "serious deterioration ... because of the aging process." U.S.S.G. § 1B1.13, app. note. The second category applies to any prisoner "suffering from a terminal illness" or "a serious ... medical condition that substantially diminishes the ability ... to provide self-care within the environment of the correctional facility." *Id.* Defendant also contends the U.S.S.G. § 1B1.13 is a non-exclusive list, and the Court has authority to find extraordinary and compelling circumstances based on COVID-19. (Doc. 347) at 4-7; (Doc. 356) at 4-7.

Many courts have found "extraordinary and compelling reasons" to justify compassionate release where the defendant's serious underlying health conditions place him at high risk of infection and death from COVID-19. *See United States v. McCarthy*, 2020 WL 1698732, at *5 (D. Conn.) (collecting cases involving asthma, diabetes, and compromised immune systems); *United States v. Jenkins*, 2020 WL 2466911, at *6 (D. Colo.) (releasing inmate based on age and

stroke risk); *United States v. Lopez*, 2020 WL 2489746, at *3 (D.N.M.) (analyzing release based on age, blood pressure, and diabetes). However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Nwankwo,* 2020 WL 2490044, at *1-2 (S.D.N.Y.) (collecting cases for the proposition "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional [risk] factors").

Here, Defendant contends she is at a high risk because she has been diagnosed with COPD, uncontrolled hypertension, and myocardial mild ischemia. (Doc. 347) at 10. The Center for Disease Control (CDC) states that these conditions increase the risk of complications and death from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 17, 2020). In addition, FMC Carswell currently has a substantial number of COVID-19 cases. *See* https://www.bop.gov/coronavirus (reflecting FMC Carswell has 541 positive cases out of a population of 1,328 inmates) (last visited August 17, 2020). Therefore, based on Defendant's underlying medical conditions and the number of positive cases at FMC Carswell, the Court finds extraordinary and compelling reasons to justify compassionate release.

C. *Section 3553(a) Factors*

Even if extraordinary and compelling reasons support a sentence reduction, Defendant must also demonstrate she is not a danger to the community and that the Section 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A)(i)-(ii); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (holding that the district court did not abuse its discretion in

denying motion for compassionate release even after concluding defendant had a terminal disease, because § 3553(a) factors did not favor release); *United States v. Carter*, 2020 WL 3051357, at *3 (S.D.N.Y.) (Section 3553(a) factors did not justify early release despite extraordinary and compelling reasons); *Easter v. United States*, 2020 WL 3315993, at *4 (E.D. Va.) (same); *United States v. Sears*, 2020 WL 3250717, at *2 (D.D.C.) (denying motion based on Section 3553(a) factors, despite petitioner's diabetes and hypertension). The community safety analysis focuses on the nature of the offense, the history and characteristics of the defendant, and the nature of the danger. U.S.S.G. § 1B1.13(2) (incorporating the 18 U.S.C. § 3142(g) factors). Section 3553(a) incorporates some of these factors and focuses on deterrence, the guideline range, and the need to avoid unwarranted sentence disparities among similar offenders. 18 U.S.C. § 3553(a).

After evaluating these factors and the record, the Court declines to grant compassionate release in this case. At sentencing, Defendant's total offense level was 38 and she received two enhancements because a dangerous weapon (a sawed-off shotgun) was used and the victim was sexually exploited. (Doc. 354) at 6 (citing Presentence Report at ¶¶ 39, 40, 47). Defendant has a lengthy criminal history, including a conviction for Attempted Murder in 1987, and a series of convictions for theft and passing bad checks. *Id.* (citing PSR at ¶¶ 50-52, 54-57, 60). In addition, Defendant has only served about 25% of her sentence (approximately 74 months of 292-month sentence), and her anticipated release date is not until February 2, 2035. (Doc. 354-3). Accordingly, the Court, while not unsympathetic to Defendant's current circumstances, concludes that even though Defendant meets the threshold requirements for release, modification is not appropriate given the nature of the offense, her history and characteristics, and the length

8

of the sentence remaining. Specifically, permitting Defendant to be released now would undermine the need for deterrence and create unwanted sentence disparities.

*D. Home Confinement*

Finally, the Court notes that Defendant's Motion also seeks home confinement as an alternative to a sentence reduction. *See* (Doc. 347) at 21 (asking in the alternative for release to halfway house until Defendant can arrange for home confinement). Before the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), the BOP could place an inmate in home confinement for the lesser of ten percent of the term of imprisonment or six months. 18 U.S.C. § 3624(c)(2). Under the CARES Act, and based on the Attorney General's declaration that the COVID-19 pandemic will materially affect BOP functioning, the BOP Director now may "lengthen the maximum amount of time for which [he or she] is authorized to place a prisoner in home confinement" under Section 3624(c)(2). Pub. Law 116-136, 134 Stat. 281, § 12003(b)(2); *see also* Memorandum from Attorney General William Barr to Director of BOP, dated Apr. 3, 2020, at 1, https://www.justice. gov/file/1266661/download (finding emergency conditions are materially affecting functioning of the BOP because of COVID-19). The CARES Act, however, does not authorize the Court to release an inmate on home detention or to review the BOP's decision not to do so. *See United States v. Read-Forbes*, 2020 WL 1888856, at *5 (D. Kan.) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); *United States v. Warren*, 2020 WL 2849908, at *2 (D. Kan.) (same). To the extent Defendant has not already done so, she should direct any request under the CARES Act to the BOP.

IT IS THEREFORE ORDERED that Defendant's Motion for Compassionate Release (Doc. 340) is denied.

_____
UNITED STATES DISTRICT JUDGE